## LEVI GREENLEAF *vs.* AMOS F. GERALD.

## Cumberland.　　Opinion April 16, 1900.

*False Representations.　Contracts.　Law and Fact.*

The question whether or not a false representation is material, whether it be relied upon by a plaintiff to support an action for deceit, or by a defendant to avoid a contract because of deceit, is one of law for the court, not of fact for the jury.

The defendant entered into a contract relating to a work to be published, entitled "Men of Progress," providing for the publication of his portrait and biographical sketch therein, the delivery to him of one copy of the work, and for his payment therefor, upon the issue of the part containing his portrait and sketch.

In an action by the assignee of the publisher to recover the amount which the defendant had agreed to pay, the latter contended that the contract was void because he was induced to execute it by means of false and material representations as to the character of the work which was to be published, made by the agent of the publisher at the time of the execution of the contract, and that such false and material representations were relied upon by him.

The defendant introduced evidence tending to prove, that the agent of the publisher, who obtained his subscription for this work, represented to him at the time that only three other residents of the town in which the defendant lived would be solicited to be subscribers to this work, and to have their biographical sketches and portraits published therein.　And also that the portraits and sketches of only three hundred persons in all would be published.

*Held;* that these representations respecting a book of this character to be published were material; that if all of the other necessary elements were proved to exist, a contract induced thereby could not be enforced; and that it was error not to instruct the jury, as requested, that these representations were material.

ON EXCEPTIONS BY DEFENDANT.

This was an action of assumpsit tried to a jury in the Cumberland Superior Court against the defendant to recover the sum of thirty-five dollars, for a certain book entitled " Men of Progress of the State of Maine".　The jury gave a verdict for the plaintiff. As evidence of that liability, the plaintiff offered in evidence a certain order signed by the defendant and dated the twenty-first day of February, 1896, as follows:—

"New England Magazine, Boston, Mass. Please send me one copy of your complete work entitled 'Men of Progress', to be issued in one large royal-octavo volume, with portraits and biographical sketches of representative men of the State of Maine, for which I agree to pay you or order, the sum of thirty-five dollars upon issue of the part containing my sketch and portrait, and delivery of the photo-engraved plate of the portrait of myself. My photograph and data for sketch I promise to furnish within thirty days or pay the above mentioned sum upon delivery of the work.

Name, A. F. Gerald.     Address, Fairfield, Maine."

The plaintiff sued as assignee of the proprietor of the N. E. Magazine and offered evidence to show that sometime, in 1897, the book was delivered to the defendant, or was left at his house, and that its presence there came to his knowledge; and that he declined to receive it, as stated in the letter of September 17th, 1897, written by him to the agent of the publisher.

It appeared that the defendant did not comply with the latter part of the contract,—that is, he did not send his photograph or the sketch of his life; and the publisher was unable to publish a sketch of the defendant in the book, or to print a portrait of him in connection with that sketch, or to furnish a plate of the portrait as provided in the order.

The defendant admitted that the publisher sent him, soon after the order was signed, a letter requesting the portrait and sketch, which he declined to furnish; and that he signed the order which constitutes the basis of the action.

He also admitted that the agent of the assignor of the plaintiff came to him and solicited this order, and that he signed it. He rested his defense upon the grounds that he was induced to sign the order by certain representations which were made by the agent, which representations he claimed were false. He also claimed that these representations were of such a character that they were material to the quality of the book, and that he relied upon these representations, and attached his signature to the order in consequence of those representations.

Upon this branch of the case the presiding justice instructed the jury as follows:—

"So there is a question of fact for you to determine. In the first place, did the agent make the representations which the defendant claims he made? If he did not, if no representations of that character were made, why that practically ends the case. Under those circumstances I do not understand that the defendant would claim that he had any defense to this action. After you have determined what the representations were, the next question is, were they material? Did they relate to the character and quality of the book to be published?

"If they were made, did they have any relation whatever to the character of the book? Because it is not every statement, every representation, that a man makes when he is about to make a trade, that is material to the issue. A man, in making a trade, may come to you and say to you that he came from Portland the day before, or that he was going along the street, and called in for the purpose of selling a horse or a carriage; and it turns out that he did not come along the street, and did not come from Portland. Now those are matters not material to the issue. But if he should make any representation as to the character of the horse, that might be material, as you see. So that, if the representations were made, the next question is, were they material?

"Did they relate to the quality and character of the article to be sold? Or, in this case, did those representations relate to the character and quality of the book which was to be published by the plaintiff's assignor? If they did not, if they had no bearing upon the quality of the book, if they were not material, then the defendant was not injured by them, and they would not avail him in the defense of this action. But if they were material, if they did relate to the character and quality of the book to be published, the next question is, were those representations false or true? Because, if true, the defendant of course was not misled, was not prejudiced thereby; and as he declined to furnish Mr. Kellogg with the data and the photographs, he has no cause of complaint, and must pay, as he agreed to pay. But if they were false, as the

defendant claims, then the question arises was the defendant misled, or did he rely upon those false representations in signing the contract?

" Whether or not they were false is a question of fact for you. The testimony offered here is that the solicitor approached Mr. Weeks, the attorney for the defendant in this action, outside of the four named in the list which the defendant says the agent referred to in his conversation with him. Now, if they were false, the next question, as I have said, is, was the defendant misled by them? That is, did he rely upon these representations in signing the contract? That he signed the contract, there is no question. Did he, relying upon these representations, which you must first find to have been false and material, sign that paper? "

The plaintiff recovered a verdict for the full amount claimed by him. The defendant requested certain instructions to the jury which the presiding justice declined to give except as contained in his charge; they are sufficiently stated in the opinion of the court.

The defendant took exceptions to the refusal to instruct the jury as he requested; he also had exceptions to the admission of certain evidence, but they were not considered by the court.

*Levi Greenleaf*, for plaintiff.

Subscriptions and contributions : " If a subscription is voluntary and independently made, even for the purpose of influencing others to subscribe and has that effect, it would be binding on the ground of the mutuality of the promises", 2 Field's Lawyers' Brief, 105 ; *Fisher* v. *Ellis*, 3 Pick. 323 ; *Trustees of Amherst Academy* v. *Cowls*, 6 Pick. 427.

Fraudulent representations : " To take advantage of fraud in a contract, it must be shown that the other party intended a deception and was successful therein to the damage of the party defrauded." *Pratt* v. *Philbrook*, 33 Maine, 22.

" A misrepresentation, moreover, to enable a purchaser to avoid a sale or contract on the ground of deceit and fraud, must be made concerning some matter very material to the value of the contract, so that there may be fair ground for thinking that the contract

would never have been entered into if the false statements had not been made." 2 Ad. on Con. 637.

To all trifling and unimportant representations not seriously affecting the value of the contract, and to all affirmations of matters of opinion and judgment, not amounting to positive assertions of fact with knowledge of their falsehood, the maxim of caveat emptor must apply.

It is presumed that all the elements material to the contract were written out and signed by the parties to the contract.

If this matter is material it should have been mentioned in the contract if it was to stand. Why was not this "material matter" reduced to writing and made a part of the contract if it was to be relied upon and if it was a part of the contract?

There are no stipulations in the contract that no Fairfield people should be represented in the work except this small coterie of gentlemen. In fact, neither they nor any one else are represented from that town.

See in the contract the following: "All conditions of this contract must be expressed in and made a part of the same. None others will be recognized."

The evidence shows that neither the defendant, nor "the three friends" are represented in the work. Is this fraud?

The conversations of parties which ripen into a written contract are not to be received to affect or control that contract.

"The rights of the parties are to be determined by the contract; nor is the contract to be avoided because one party or the other may err in his construction of its legal meaning and effect." *Insurance Co.* v. *Hodgkins*, 66 Maine, 113.

Contracts may be set aside on the ground of fraud, but in an action upon a contract that is expressed in writing in plain, consistent and unambiguous language, it must be taken to express the intention of the parties, and it can not be contradicted or varied by parol evidence. *Warren* v. *Jones*, 51 Maine, 146.

Even though the soliciting agent had told the defendant that none except the four mentioned from Fairfield would be represented in the work, he cannot be guilty of fraudulent representa-

tion of material matter, because none others are represented there, not even they themselves.

"Though a party may have been deceived by fraudulent representation, it is not usual for courts to interfere in his behalf, if he has full means of ascertaining the truth and detecting the fraud, and yet neglected to do so." *Pratt* v. *Philbrook*, 33 Maine, 17.

The defendant could not have known how many or what names were to go into the work, the style of binding, or the other things when he refused and neglected to furnish his photograph and biographical sketch, for the written work was not complete, nor had it gone to the binder.

Is it fraudulent to publish a large and complete work containing six hundred of the most distinguished men of our State, with their photographs and biographical sketches, instead of a smaller and inferior one?

"Where the question of fact for the jury to decide is a question of fraud, and they have decided against the 'fraud', the court will not, except in very glaring cases, grant a new trial." *Googins* v. *Gilmore*, 47 Maine, 16.

*Geo. G. Weeks*, for defendant.

Materiality of the false representation is a question of law.

Counsel cited: *Hammatt* v. *Emerson*, 27 Maine, 316; *Coburn* v. *Haley*, 57 Maine, 346; *Long* v. *Woodman*, 58 Maine, 49; *Martin* v. *Jordan*, 60 Maine, 531; *Roberts* v. *Plaisted*, 63 Maine, 335; *Thompson* v. *Hinds*, 67 Maine, 177; *Buck* v. *Leach*, 69 Maine, 484; *Coolidge* v. *Goddard*, 77 Maine, 578; *Palmer* v. *Bell*, 85 Maine, 352; *Hoxie* v. *Small*, 86 Maine, 23; *Caswell* v. *Hunton*, 87 Maine, 277; *Braley* v. *Powers*, 92 Maine, 203; *Penn Mut. Life Ins. Co.* v. *Crane*, 134 Mass. 56.

SITTING: HASKELL, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

WISWELL, J.  The defendant signed an order and contract directed to the New England Magazine, Boston, Mass., in which he requested that one copy of a work entitled "Men of Progress," consisting of one volume of portraits and biographical sketches of

representative men of the State of Maine, be sent him, and in which he agreed to pay therefor the sum of $35, "upon issue of the part containing my sketch and portrait, and delivery of the photo-engraved plate of the portrait of myself."

In an action by the assignee under a written assignment of a claim growing out of this contract, the defendant contended that the contract was void and imposed no liability upon him because he was induced to execute it by means of false and material representations, relied upon by him, as to the character of the work which was to be published, made by the agent of the publisher who solicited his subscription, and at the time of the execution of the contract.

The defendant introduced evidence tending to show that certain representations were made to him, before he signed the contract, relative to the number of persons in the town in which he lived who were to be solicited to have their biographical sketches and portraits published in this work, and also as to the whole number of persons whose sketches and portraits were to be published; that these representations were false, that they were relied upon by him and that he was thereby induced to execute the contract.

The defendant's counsel requested the court to instruct the jury, in effect, that if these representations were made, and were false, and were relied upon by the defendant who was thereby induced to make the contract, the action could not be maintained; the object of these requests evidently being to obtain an instruction that the alleged false representations were material. The presiding judge did not give the requested instructions, nor did he in his charge instruct the jury as to whether or not the alleged false representations, if made as claimed by the defendant, were material. But he submitted this question as one of fact to the jury for determination.

This was erroneous. The question whether or not a false representation, whether it is relied upon by the plaintiff to support an action for deceit, or by a defendant to avoid a contract, because of deceit is material, is one of law for the court, not of fact for the jury. This was fully settled in this state in the case of *Caswell* v. *Hunton*, 87 Maine, 277.

This failure, however, to instruct the jury as to the materiality of the representations relied upon by the defendant would not be prejudicial to the defendant, unless the representations were as a matter of law material, so that this question must be considered.

The contention of the defendant was, and he introduced evidence tending to prove, that the agent of the publisher, who obtained his subscription for this work, represented to him at the time that only three other residents of the town, in which the defendant lived, would be solicited to become subscribers to this work and to have their biographical sketches and portraits published therein. And also that the portraits and sketches of only three hundred persons in all would be published therein.

We think that these were material representations, and that if all of the other necessary elements were proved to exist, a contract induced thereby could not be enforced. They were representations relative to the character and contents of a book that was to be subsequently published; and while ordinarily it would be no defense to a subscriber to a book to be published that it contained more than it was represented it would contain, this is not true with reference to a work of this particular character. The inducement held out to a person, in order to obtain from him such a contract as this, is not simply that the subscriber may obtain a copy of the book, but that he may have the pleasure of seeing, and of knowing that others will see, his own sketch and portrait published therein. Under these circumstances the greater the number of persons whose sketches and portraits are published, the less distinction to each. This defendant was to have his sketch published as one of the "representative men of the State of Maine." It very likely was not nearly as satisfactory to him to be included among some six hundred representative men in the state, as it would have been to have been one of only half that number. We think, therefore, that the failure to instruct the jury that these representations were material was prejudicial to the defendant as well as erroneous.

This disposes of the case and makes it unnecessary to consider the other exception.

*Exceptions sustained.*